UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:26-cv-282

| | |
|---|---|
| J.P., a minor, by and through his *Guardian Ad Litem*, Kristy Lacy, and Kristy Lacy, individually<br><br>Plaintiffs,<br><br>v.<br><br>Burke County Board of Education; Mike Swan, in his individual capacity and in his official capacity as Superintendent of Burke County Public Schools; Meagan Radford Poteat, in her individual capacity and in her official capacity as Teacher in Burke County Public School; Jessie Gravel, in her individual capacity and in her official capacity as Exceptional Children Director; Lisa Ervin, in her individual capacity and in her official capacity as Principal, Heidi Carico, in her individual capacity and in her official capacity as School Psychologist and Autism Consultant in Burke County Public Schools,<br><br>Defendants. | COMPLAINT<br>(Jury Trial Demanded) |

NOW COME Plaintiffs, by and through undersigned counsel, and complain against Defendants as follows:

## PLAINTIFFS' COMPLAINT AND APPEAL OF FINAL DECISION BY THE NORTH CAROLINA OFFICE OF ADMINISTRATIVE HEARINGS

1. Plaintiffs, J.P., a minor, by and through his parent and guardian, Kristy Lacy, and Kristy Lacy individually, files this Complaint against Defendants for their discriminatory and tortious conduct against Plaintiffs.

2. Additionally, and pursuant to 20 U.S.C. § 1415, Plaintiffs also file this Complaint as a party(s) aggrieved by the findings and decision of an Administrative Law Judge ("ALJ") and formally places all Defendants on notice of Plaintiffs' appeal of the final order rendered on June 08, 2026 by the North Carolina Office of Administrative Hearings ("OAH"). The OAH order was served upon and received by Plaintiffs on June 09, 2026, and Plaintiffs are within the ninety (90) day period to file a civil action in federal court after receipt of the notice of the decision (see Exhibit A attached hereto).

## SUMMARY

3. This civil action arises from several instances, acts and omissions depriving Plaintiffs of Constitutionally protected civil-rights and other Federal laws prohibiting discrimination and retaliation based on disability status of a student against a school district that receives federal funds and warrants a safe learning environment in accordance with the Equal Protection Clause of the Fourteenth Amendment, The North Carolina State Constitution, and the Americans with Disabilities Act.

4. Plaintiffs allege multiple civil rights violations, personal injuries, and other tortious acts by Defendants which arise from an undisputed instance of physical abuse to minor J.P. during his time as a student in Burke County Public Schools. The conduct of Defendants also includes, but is not limited to, unlawful restraint, false imprisonment, false arrest, negligence, gross negligence, willful/wanton or malicious conduct, assault, battery, abuse to a person with a physical or developmental disability, child maltreatment, concealment, failure to report, failure to investigate, and continuing denial of equal educational access to J.P. -- a disabled, autistic, nonverbal child in Burke County Schools.

5. Plaintiff J.P. was born on March 12, 2010. J.P.'s mother and guardian, Plaintiff Kristy Lacy (hereinafter "Ms. Lacy" or "Mother"), confirms that Plaintiff J.P. is a level-three autistic child who receives Social Security disability and will not be able to live independently.

6. As Ms. Lacy prepared for J.P. to be registered as a student with Burke County Public Schools, Ms. Lacy reported J.P.'s disability status to the School District on or around March 28, 2014. Following this, minor J.P. was granted special education accommodations including an Individualized Education Plan ("IEP") in accordance with the civil rights and special educational protections, access, benefits, and antidiscrimination or retaliation guarantees and regulations set forth in the Individuals with Disabilities Education Act ("IDEA"), Americans with Disabilities Act ("ADA"), Section 504 of the

Rehabilitation Act of 1973 ("Section 504" or "504"), the Free Appropriate Education Plan ("FAPE"), and protections set forth under both the North Carolina Constitution and United States Constitution.

7. In March of 2014, while J.P. was a student in BCPS, J.P. was violently assaulted, abused, and unlawfully restrained without immediately notifying Ms. Lacy. Following the instance of abuse that caused physical, emotional, and psychological harm, J.P. he was kept at school all day without medical treatment, and that school staff returned him to her vehicle at pickup without telling Ms. Lacy what occurred on this day. J.P. was a non-verbal student who suffered from autism disorder and could not report the personal injuries that were inflicted by Defendant Poteat to his mother.

8. After several days of the information being concealed and unreported to Ms. Lacy, Ms. Lacy was later contacted by J.P.'s Principal, Defendant Lisa Ervin, who informed her that J.P. had suffered injuries from being the victim of physical assault, battery, abuse, maltreatment, negligence, gross negligence, and malicious conduct of Defendant Poteat. The Principal, Defendant Lisa Ervin, informed Ms. Lacy that J.P., her then-four-year-old son, was abused, unlawfully restrained, and assaulted by his preschool teacher, Defendant Meagan Poteat, which was witnessed by the principal.

9. Upon information and belief, criminal court records indicate that Defendant Meagan Radford Poteat was criminally charged with "ASSAULT

HANDICAPPED PERSON," with an offense date listed as March 21, 2014 and a filed date of April 14, 2014.

10. Upon information and belief, Defendants failed to report Defendant Poteat's malicious and tortious misconduct to the North Carolina State Board of Education as required by N.C.G.S. § 115C-362.20. The result of Defendants' omission, gross negligence, and deliberate indifference to the rights and safety of Plaintiffs resulted in Defendant Poteat to remain licensed, creating a long-standing hostile environment for students with disabilities, such as J.P., and additional trauma to Ms. Lacy as they witnessed Poteat's injurious actions go unchecked by BCPS.

11. Additionally, the conduct of Defendant Poteat constitutes and excessive and unlawful restraint of former student J.P., in violation of the Fourth and Fourteen Amendments to the United States Constitution. Furthermore, Defendant Poteat's supervisors and employer, including Defendant Lisa Ervin who witnessed the events and BCPS Defendants, failed to train, intervene, supervise, and otherwise provide a safe learning environment for J.P.

12. Upon information and belief, the School District implemented unlawful authorizations of CPI restraints as a behavioral standard by staff and School Resource Officers ("SRO") into the IEP for J.P.'s and other students with disabilities, without consent or notice to Ms. Lacy.

13. Plaintiff J.P.'s diagnoses of Level 3 Autism Disorder and other intellectual or developmental disabilities impacts J.P.'s communication skills, often times making it difficult for him to communicate effectively with family, peers, teachers, and exception children ("EC") support personnel.

14. Due to J.P.'s disability status and inability communicate without the assistance of others, and J.P. was a vulnerable student left in the care of a school district who vowed to provide protections and accommodations for him. Instead, BCPS Defendants caused severe and significant injuries and violations to J.P.

15. Following the actions of Defendant Poteat, Ms. Lacy noticed that the District unilaterally removed 1:1 support services and other IEP/FAPE/504 accommodations from J.P., beginning on or around November 2024 and lasting up to May of 2025.

16. Defendants unjustified and retaliatory efforts resulted in a failure to provide the previously necessary 1:1 EC support accommodations without written notice to Ms. Lacy violated IDEA and specific implementation regulations set forth in 34 C.F.R. § 300.503. The removal was never disclosed to Ms. Lacy, and J.P. began exhibiting signs of distress and regressed into bouts of severe anxiety following the removal of the 1:1 EC support.

17. BCPS Defendants deliberately perpetuated a hostile learning environment to students with disabilities, such as J.P., resulting in increased psycho-trauma, anxiety, and regression to J.P.'s educational opportunities.

18. For nearly 280 days, Ms. Lacy requested explanations, IEP records, records relating to the assault of J.P., and related interventions by BCPS, but this information was repeatedly withheld or concealed from Ms. Lacy.

19. In May of 2025, during an IEP meeting for J.P., Ms. Lacy learned that Defendant Poteat was still teaching children in neighboring school district (Rutherford County Schools) and discovered more information that revealed Defendants' concealment, conspiracy, and conscious disregard for the educational and federally protected civil rights of J.P.

20. Following the discovery of the Defendants' concealment and misrepresentations, Ms. Lacy requested an emergency and immediate removal of her son from Burke County Public Schools and invoked several provisions of the ADA, FAPE, 504, and IDEA that would allow for the school district to remedy the harms suffered by J.P. and Ms. Lacy.

21. Former BCPS Superintendent, Defendant Mike Swan, knew of the assault and abuse to J.P. and, as recent as December of 2023, knew of the failures to accommodate J.P., but participated in the concealment, misrepresentation, and concerted effort to conceal the acts of Defendants Poteat, Ervin, and other BCPS actors.

22. In an email on December 07, 2023, Ms. Lacy emailed Defendant Swan, regarding J.P.'s educational progress. Unbeknownst to Ms. Lacy, Defendant Swan and BCPS Defendants altered J.P.'s schedule between December 2023 and August 2024, without notice or consent, in violation of J.P.'s IEP Prior

Written Notice requirement (34 C.F.R. § 300.503) and constitutes a denial of J.P.'s FAPE protections (20 U.S.C. § 1412(a)(1)).

23. Defendant Jessie Gravel is sued in her individual and official capacity as Exceptional Children (EC) Director at BCPS. Defendant Gravel knew of the malicious acts perpetrated against J.P. and made a concerted effort to conceal the abuse to non-verbal children with disabilities, such as J.P., and the resulting retaliatory failure to accommodate, removal of IEP/FAPE/504 accommodations, and neglect of J.P. Defendant Gravel's conduct is also highlighted by the contradictory accounts exchanged in the March 25, 2025 emails with NCDPI Behavioral Specialist, Vivian Radford, regarding the failures to adhere to J.P.'s educational rights.

24. Defendants failed to implement behavioral intervention support to J.P. or notify Ms. Lacy during J.P.'s heightened dysregulation between December 2022 and January 2023. This information was concealed and not revealed until Ms. Lacy learned of the complete picture of Defendants contradictions in May of 2025.

25. Upon information and belief, the BCPS had and continues to have no internal monitoring policy for reviewing and ensuring compliance with state and federal law regarding restraint and other aversive procedures or standards involving children with disabilities, such as J.P.

26. Evidence-based research suggests that seclusion and restraint tactics by school officials on students are "ineffective harmful, and outdated"

practices[1] that are, often times, deployed or administered in an illegitimate, discriminatory, and unspeakably harm way in schools – especially with regard to the almost exclusive application to children with disabilities[2].

27. To highlight the significant harm that restraint and/or seclusion has on students, the North Carolina General Assembly passed the Deborah Greenblatt Act prohibiting the illegal use of restraint and seclusion on public school students. North Carolina Gen. Stat. §§115C-47(45); 391.1.

28. More than this, in 2014 , the U.S. Senate Committee staff report stated there is no evidence that physical restraint or seclusion provides "any educational or therapeutic benefit to a child."[3]

29. Regarding physical assault, abuse, or "aversive procedures" by school officials, N.C. Gen. Stat. § 115C-391.1(b)(2) states that such "aversive procedures" are prohibited and may reasonably expected to cause "significant physical harm" and serious "foreseeable long-term psychological impairment." The actions of Defendant Poteat amount to the very assault, abuse, and "aversive procedure" against minor J.P. and the resulting failures

---

[1] Maj. Staff of S. Comm. on Health. Education, Labor, and Pensions Report, 113th Cong., Dangerous Use of Seclusion and Restraints in Schools Remains Widespread and Difficult to Remedy: A Review of Ten Cases (February 12, 2014);
https://www.help.senate.gov/imo/media/doc/Seclusion%20and%20Restraints%20Final%20Report.pdf

[2] While students with disabilities make up only 13% of enrollment in schools nationally, 80% of all documented uses of restraint and 77% of all incidents of seclusion are carried out against students with disabilities. U.S. Dept. of Education, Office of Civil Rights, *2017-18 Civil Rights Data Collection: The Use of Restraint and Seclusion on Children with Disabilities in K-12 Schools* (Oct. 2020).
https://www2.ed.gov/about/offices/list/ocr/docs/restraint-and-seclusion.pdf

[3] Maj. Staff of S. Comm. on Health. Education, Labor, and Pensions Report, 113th Cong., Dangerous Use of Seclusion and Restraints in Schools Remains Widespread and Difficult to Remedy: A Review of Ten Cases (February 12, 2014).

to report or provide accommodations after the actions against BCPS Defendants is evidenced in this case.

30. Students with disabilities, including J.P., are entitled to the same level of care, respect, consideration, and safety as non-disabled students. Defendants deliberate indifference and disregard for the rights of students with disabilities such as J.P. has created an educational environment that is unsafe, retaliatory, discriminatory, and abusive to physical and psychological safety students like J.P. Further, Defendants' unlawful use of restraint, abuse, or aversive procedures against J.P. or any other student with a disability is illegal, detrimental, and an unjustifiable education inequity to disabled students' access to education in BCPS.

31. When BCPS denied Plaintiffs' request and demand for accountability, Ms. Lacy filed her initial Petition and opened a case with OAH (Exhibit C, Petition and Filings by Plaintiffs; see Case No. 26 EDC 01455).

32. Defendants were warned of these potential long-term, negative consequences to J.P.; yet they intentionally and repeatedly continued to punish him through the use of abusive treatment and restraint. Due to Defendants' discriminatory and illegal use of abusive treatment and unlawful restraint against him, J.P. suffers from ongoing symptoms including but not limited to trauma, school refusal, developmental regressions, nightmares and psychological dysregulation.

33. Following the acts and omissions of Defendants, J.P. continued to suffer personal injuries and damages as a direct and proximate result of the abuse, assault, unlawful restraint and other tortious acts by Defendants. Further, between January 2023 and April of 2026, Plaintiffs suffered several instances of retaliation, discrimination, material misrepresentations affecting J.P.'s education, failures to accommodate J.P.'s special education needs, abrupt and unexplained changes to J.P.'s IEP/FAPE/504 accommodations, and concealment of material information – all of which resulted in a deliberate indifference to Plaintiffs' rights and culminated in the filing of Plaintiffs' OAH Complaint and this civil action.

34. This civil action case challenges not only the initial abuse and restraint, but also seeks to recover damages against Defendants for deliberate indifference manifested by BCPS's institutional response that followed: delayed notice, lack of medical care, failure to report to appropriate agencies, failure to document the incident in J.P.'s special-education records, misleading statements to Ms. Lacy, conflicts of interest, and concealment that delayed discovery of the full scope of Defendants' misconduct.

35. Plaintiff J.P. and his parent, Plaintiff Kristy Lacy, bring this lawsuit to ensure Defendants are held accountable for their excessive and illegal use of restraint to punish a student with a disability while attending a school in Burke County Public Schools. Plaintiffs also seek relief under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131, et. seq., Section

504 of the Rehabilitation Act of 1973 ('Section 504"), 29 U.S.C. §§ 794, et. seq., 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution, and North Carolina law.

36. As evidenced by the discoveries of Ms. Lacy in May of 2025, the BCPS also knowingly or maliciously withholds accurate reports of the use of restraint, seclusion, and abuse by employees of BCPS from the North Carolina State Board of Education and the Office of Civil Rights.

37. There is no educational purpose for restraining or abusing BCPS students.

38. Had Defendants followed the requirements of Section 504 and the ADA to provide basic and reasonable accommodations to J.P. and other students in the EC program, the use of restraint and abuse would have been wholly unnecessary and preventable.

39. Therefore, Plaintiffs were injured and are entitled to recover damages caused by Defendants' violations of Plaintiffs' constitutional rights as well as damages resulting from Defendants' negligence, negligent infliction of emotional distress, false imprisonment, and other tortious acts in accordance with North Carolina law.

## THE PARTIES

40. Plaintiff J.P. is a minor child and a citizen and resident of North Carolina. His date of birth is March 12, 2010.

41. Plaintiff Kristy Lacy is J.P.'s mother, guardian, and *Guardian Ad Litem* for the purposes of this civil action. Plaintiff Kristy Lacy ("Ms. Lacy" or "Mother") is a citizen and resident of Morganton, Burke County, North Carolina.

42. Plaintiff Kristy Lacy also brings claims individually for the injuries, losses, emotional distress, and damages she personally sustained as a result of Defendants' conduct, concealment, and misrepresentations.

43. Defendant Burke County Board of Education (hereinafter "Burke BOE" and "Defendant School Board") is a North Carolina local board of education responsible for operating Burke County Public Schools (hereinafter "BCPS" and "School District") and providing students, including disabled students, equal access to public education in compliance with state and federal law.

44. Defendant, BURKE COUNTY BOARD OF EDUCATION ("Burke BOE" and "Defendant School Board") is a Local Education Agency ("LEA"), who maintains authority to operate Burke County Public Schools ("School District") by statutory authority vested from the North Carolina State Board of Education ("State Board"), and a local municipality and/or a "body corporate" entity duly organized and existing under N.C. Gen. Stat. § 115C-40 with its principal place of business and registered address located at 700 E. Parker Road, P.O. Drawer 989, Morganton, NC 28680, in Burke County,

North Carolina. Defendant Burke County Board of Education is organized as a local school district known as "Burke County Public Schools" ("BCPS").

45. Defendant Burke County Board of Education is a "person" for purposes of 42 U.S.C. § 1983 to the extent Plaintiffs allege constitutional deprivations caused by its policies, customs, practices, deliberate indifference, failures to train or supervise, ratification, or decisions of final policymakers.

46. Defendants Poteat, Ervin, Swan, Gravel are individual "persons" who are/were employees of BCPS and are sued in their individual and official capacities for acts or omissions arising within the course and scope of his/her employment, authority, agency, and acting in furtherance of the business of or on behalf of Burke County Public Schools.

47. Defendant Meagan Radford Poteat was, at relevant times, a teacher employed by Burke County Schools. The Burke County criminal court record identifies "MEAGAN RADFORD POTEAT" as the defendant charged with assault on a handicapped person. She is sued in her individual and official capacities.

48. Defendant Lisa Ervin was, at relevant times, the principal responsible for the school where J.P. attended preschool. Ms. Lacy reported that the principal witnessed the assault. The principal is sued in her individual capacity.

49. Defendant Mike Swan was, at relevant times, the Superintendent for Burke County Schools and was responsible for implementing state and

federal law, Board policies, staff training, staff supervision, reporting, and student safety.

50. Defendant Jessie Gravel was responsible for Exceptional Children services, special-education compliance, reporting, and ensuring disabled students received equal and safe access to public education.

51. Defendant Heidi Carico was, at relevant times, a school psychologist and/or autism consultant associated and acting on behalf of Burke County Schools. Ms. Lacy reported that Heidi Carico was a school psychologist for the district during the time of the assault and later became an autism consultant who was placed on J.P.'s IEP team without disclosure as recently as October 2024.

## JURISDICTION AND VENUE

52. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which gives federal district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

53. This Court has jurisdiction under 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of

Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights. 28 U.S.C. §1343 applies because Plaintiffs seek redress for deprivations of rights secured by the United States Constitution and federal civil-rights statutes.

54. This Court has subject-matter jurisdiction in this action under 28 U.S.C. § 1331, as Plaintiffs bring claims against Defendants under 42 U.S.C. § 1983 for violations of the Fourth and Fourteenth Amendments. Further, Plaintiffs bring disability-discrimination and retaliation claims under the IDEA, Title II of the ADA, and Section 504 of the Rehabilitation Act.

55. This Court has supplemental jurisdiction over Plaintiffs' related North Carolina claims under 28 U.S.C. § 1367 because those claims arise from the same nucleus of operative facts.

56. Venue is proper in the Western District of North Carolina because the events occurred in Burke County, North Carolina, and the relevant Defendants reside, work, or acted within this District.

## FACTUAL BACKGROUND

57. Plaintiffs hereby reallege, restate, and otherwise incorporate by reference all preceding allegations set forth above in the preceding paragraphs with the same force and effect.

58. J.P. is a minor child born March 12, 2010 and student who attended BCPS schools from August 2014 to his withdrawal on May 17, 2025.

59. J.P. is diagnosed with autism spectrum disorder, is deemed to be non-verbal autistic level III, qualified for exceptional children (EC) or special education (SPED) educational services, receives Social Security disability, and, according to Ms. Lacy, will never be able to live independently.

60. At the time of the alleged assault and subsequent actions by Defendants, J.P. was in his first year of preschool, approximately six months into preschool, nonverbal, newly diagnosed, and had not previously been away from Ms. Lacy in that setting.

61. According to reports by BCPS officials, the assault was committed by J.P.'s preschool teacher (Defendant Poteat) and witnessed by the principal (Defendant Ervin). However, BCPS Defendants did not inform or disclose to Ms. Lacy of the malicious and violent acts by Defendant Poteat until approximately four days after the initial incident.

62. Ms. Lacy was given no explanation for the delayed notification and received no apology from the School District.

63. The Burke County criminal court record lists the charged offense as "ASSAULT HANDICAPPED PERSON," identifies the statute as 14-32.1(F), lists the degree as MA1, and lists the filed date as April 14, 2014.

64. Upon information and belief, in January of 2015, the criminal charges against Defendant Poteat were procedurally dismissed due to a "technical error" and the State prosecutor's alleged failure to comply with G.S. 15A-301.

65. The dismissal of the criminal charge was procedural and did not establish that the assault did not occur. BCPS Officials, including Defendants Swan and Ervin admitted that J.P. was restrained, abused, and assaulted by Defendant Poteat.

66. Ms. Lacy was later informed by Defendant Ervin that Defendant Poteat would "lose her teaching license, would never teach again, and would be placed on a registry preventing her from working around children." Unfortunately, these material misrepresentations were not discovered until May 15, 2025 by Ms. Lacy.

67. Two days after learning about Defendants concealment and after repeated IEP/IDEA/ADA/504/FAPE violations and unexplained changes to J.P.'s EC accommodations, on May 17, 2025, Ms. Lacy sent an email to the BCPS officials, communicating her request for J.P.'s permanent withdrawal from the Burke County School District.

68. In the May 2025 IEP meeting, Ms. Lacy discovered that the abuse and restraint incidents were never included in J.P.'s IEPs or records and Defendants concealed this information from the North Carolina State Board of Education and U.S. Department of Education's Office of Civil Rights (OCR).

69. Following the incidents of abuse and changes to J.P.'s accommodations, J.P. was never offered mandated services for the trauma of the incident.

70. Between April 2024 and April 2025, Ms. Lacy learned that BCPS hired Defendant Heidi Carico to become involved in J.P.'s IEP team as a district-level autism consultant without Ms. Lacy's knowledge or consent.

71. Upon information and belief, Defendant Heidi Carico was placed on J.P.'s IEP team as recently as October 2024 and that Ms. Lacy did not know whether Heidi Carico shared space with J.P. These actions resulted in J.P. enduring years of compounded trauma, regression, restraint, exclusion, retaliatory treatment, and persistent denial of FAPE protections.

72. Following the initial assault to J.P., Ms. Lacy observed redness and tenderness at J.P.'s scalp from being whipped around by his hair. Defendants knew or should have known that J.P.'s disability, young age, nonverbal status, and dependence on school staff made him uniquely vulnerable to abuse, restraint, concealment, and denial of notice.

73. Defendants knew or should have known that failing to immediately notify Ms. Lacy, failing to provide medical evaluation, failing to report the incident, and failing to document the incident would foreseeably cause harm to J.P. and Ms. Lacy.

74. Defendants' misrepresentations and omissions prevented Ms. Lacy from discovering the full scope of the constitutional violations, the District's

institutional failures, and the continuing danger posed by Defendant Poteat's lack of accountability.

75. Defendants' conduct also prevented Ms. Lacy from timely discovering the District's alleged custom, policy, and practice of failing to report, failing to document, failing to supervise, failing to train, and concealing abuse of disabled students.

## WAIVER OF SOVERIGN OR GOVERNMENT IMMUNITY

76. Upon information and belief, Defendant Burke County Board of Education ("Defendant School Board" or "BCPS") is a local board of education has duly waived its governmental immunity in tort or negligence actions, such as the allegations set forth herein, as provided through N.C. Gen. Stat. § 115C-42.

77. Upon information and belief, pursuant to N.C. Gen. Stat. § 115C-42, Defendant School Board waived its governmental immunity by the purchase of liability insurance or participation in government risk pool, thereby waiving immunity from liability caused by the actions or tort of any agent or employee of the board of education when acting within the course and scope of his/her authority or within the course of his/her employment. Defendant School Board purchased and had in force on and applicable to the acts falling under the coverage periods between 2014 and 2025, such a liability insurance

policy that extends to the negligence or tortious actions of their members, agents, and employees.

78. Upon information and belief, pursuant to N.C. Gen. Stat. § 115C-43, Defendant School Board is authorized to provide a defense in civil actions for negligence, such the allegations made by Plaintiffs herein, to any member or employee or former member or employee brought against him/her in either his/her official or individual capacity, or both. Defendant School Board purchased and had in force between the applicable insurance policy coverage periods from 2014 to 2025, and such a liability insurance policy that extends to the negligence or tortious actions of their members, agents, employees – including Defendants Poteat, Gravel, Swan, Ervin, and Carico, who are sued in their respective individual and official capacity in this action.

79. Alternatively, to the extent that Defendant School Board alleges "sovereign immunity" as a municipality, State agency or agent of the State pursuant to N.C. Gen. Stat. § 160A485 or other authority, the Defendant School Board had purchased and had in force between 2014 and 2025, liability and/or umbrella insurance and/or participated in a local government risk pool and/or adopted, through its city council, a resolution creating a funded reserve and deeming the creation of said funded reserve to be the same as the purchase of insurance under N.C. Gen. Stat. § 160A485 and thereby under North Carolina law, waived any governmental immunity it might have to the extent of such insurance as provided by a policy of

insurance, participation in a local government risk pool or adoption of a resolution as aforesaid.

**WAIVER AND INAPPLICABLITY OF PUBLIC OFFICIAL IMMUNITY**

80. Upon information and belief, to the extent that BCPS Defendants may claim public official immunity regarding Plaintiffs' state law claims, Plaintiffs contend that BCPS Defendants are not public officials, but are public employees who performed duties or executed specific duties arising out of fixed and designed facts related to operation of schools and EC services in BCPS and include acts or omissions amounting to negligence regarding the execution of those duties regarding BCPS in J.P.'s schools, that resulted in injuries to Plaintiffs.

81. Additionally, to the extent the BCPS Defendants claim that they are entitled to public official immunity for actions within the course and scope of their employment or authority, public official immunity does not apply if the acts or omissions were done so with malice or corruption.

82. A Defendant acts with "malice" and thus may be subject to punitive damages, when he/she wantonly does that which a person of reasonable intelligence would know to be contrary to his/her duty and which he/she intends to be prejudicial or injurious to another.

83. Under North Carolina law, "Willful' or "Wanton" conduct, means the means the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is

reasonably likely to result in injury, damage, or other harm. N.C. Gen. Stat. § 1D-5(7).

84. As set forth in Plaintiff's factual allegations below, Individual Defendants conduct amounted to "malice" or "wanton" conduct as evidence in Defendants deliberate indifference to the rights and safety of Plaintiff regarding racial discrimination and racial harassment. To the extent that Individual Defendants conduct constitutes "malice," those Defendants are also not entitled to governmental or public official immunity in addition the aforementioned waiver of such immunity by the purchase liability insurance.

85. BCPS Defendants and Superintendent are employees and/or agents of Defendant Burke County Board of Education Board ("School Board"), through the operation of Burke County Public Schools ("BCPS" or "School District"), which bears legal responsibility under state law for the acts and omissions of the District's employees undertaken in the course of their employment. Defendant School Board is responsible for the appointment, training, supervision, promotion, compliance, accountability, oversight and discipline of supervisory directors, officers, school administrators, and teachers, including the individually named defendants herein.

86. The aforesaid actions of the Defendant School Board provided liability insurance coverage for damage by reason of death or injury to person or property caused by the negligence or tort of any officer, agent or employee of the Guilford County Public School System and/or the Guilford County Board

of Education when acting within the scope of his/her authority or within the course of his/her employment and/or agency with the Burke County Public Schools and/or the Burke County Board of Education and the Defendant School Board, its officers, agents and/or employees, including officers, agents, servants and/or employees of Burk County Public Schools, are therefore insured for their potential liability based on this claim and have thereby waived their sovereign immunity to the extent of said insurance.

87. Further, pursuant to Defendant School Board's own policies, upon information and belief, Defendant School Board purchased and provided general liability insurance for Defendant School Board collectively and individually, and for BCPS employees or agents.

88. The injuries sustained by the Plaintiffs are of the type and extent that fall within the ambit of insurance coverage obtained and afforded by Defendant School Board and/or other funds set aside by Defendant School Board as described above.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES AND APPEAL OF FINAL JUDGMENT OF THE OFFICE OF ADMINISTRATIVE HEARINGS, PURSUANT TO 20 U.S.C. § 1415**

89. Upon information and belief, Plaintiffs filed an OAH Petition and Complaint on or about April 26, 2026.

90. The OAH and ALJ dismissed Plaintiffs claims for Section 504, ADA, and FERPA claims because the NC OAH lacked subject-matter jurisdiction over Plaintiffs' claims (see Exhibit A, ¶¶ 1-2).

91. The NC OAH further stated that Plaintiffs (formerly Petitioners) may bring claims that only arise in the State of Limitations period of April 23, 2025 and April 23, 2026. (Exhibit A, ¶ 8). After determining the limited Statute of Limitations, the NC OAH granted summary judgment in favor of Burke County Public Schools, dismissing Plaintiffs' claims (Exhibit A, ¶¶ 13-18).

92. Pursuant to 20 U.S.C. § 1415 of the Individuals with Disabilities Education Act ("I.D.E.A."), any party aggrieved by the findings and decision of an Administrative Law Judge may institute a civil action in federal court within ninety (90) days after receipt of the notice of the decision.

93. The North Carolina Office of Administrative Hearings ("NC OAH" or "OAH") issued a final ruling on June 08, 2026, dismissing all or some of Plaintiffs claims against Defendant Burke County Schools ("Burke Board of Education").

94. OAH's final judgment was served on Plaintiff Kristy Lacy on June 09, 2026. Therefore, Plaintiffs, as an aggrieved persons or parties, hereby timely file this Complaint and, following the filing of this Complaint, will notify the OAH of Plaintiffs' intent to appeal such decision.

## LIMITATIONS, TOLLING, FRAUDULENT CONCEALMENT, AND ESTOPPEL

95. J.P. was born March 12, 2010. At the time of the filing of this Complaint, J.P. is still a minor, with incapacity or disability, until after his

eighteenth birthday – March 12, 2028. Further, minor J.P. brings this civil action by and through his parent and *Guardian Ad Litem*, Kristy Lacy.

96. North Carolina law tolls limitations periods for persons under disability, including persons under age eighteen. Further, to the extent North Carolina's state law procedural statute of limitations period(s) apply to J.P.'s claims, those periods have not expired and or otherwise tolled during the period of J.P.'s minority, disability, or incapacity to file suit for personal injuries and damages.

97. Further, claims brought under 42 U.S.C. § 1983 are subject to North Carolina's three-year limitations period. However, accrual begins when the plaintiff has sufficient facts about the harm such that reasonable inquiry would reveal the cause of action. *Harris v. State of North Carolina* (E.D.N.C. 2018).

98. Ms. Lacy had limited knowledge of the 2014 incidents that resulted in the criminal charges against Defendant Poteat for the violent, abusive, and malicious conduct towards Ms. Lacy's then four-year-old son – minor J.P. Additionally, beyond a simplified explanation from Burke County Public Schools that an "assault did occur," Ms. Lacy did not know the full factual background until May 15, 2025 – due to Defendants' concealment, misrepresentations, fabrication of evidence, malicious misinformation, failure to report, failure to document, failure to discipline, failure to notify licensing

authorities, failure to provide records, and retaliatory actions during J.P.'s IEP process.

99. Ms. Lacy reported that the principal (Defendant Ervin) affirmatively told her Defendant Poteat would "lose her license, never teach again, and be placed on a registry preventing work around children." However, Ms. Lacy did not discover the concealment, fabrication, and falsity of Defendants' representations until the May 15, 2025 I.E.P. meeting, when she learned Defendant Poteat had been named Teacher of the Year in nearby school district – Rutherford County Schools[4].

100. Under North Carolina law, equitable estoppel can prevent a defendant from asserting a limitations defense where the defendant actively, affirmatively, and deliberately conceals essential facts, preventing the plaintiff from learning those facts before limitations expires. *Friedland v. Gales*, 131 N.C. App. 802, 795, 798 (1998).

101. Under North Carolina law, fraud-based claims accrue when the aggrieved party discovers, or through proper diligence and reasonable prudence should have discovered, the facts constituting the fraud. *Taylor v. Bank of Am., N.A.*, 898 S.E.2d 740, 9-10 (N.C. 2024).

102. Upon information and belief, Defendants are equitably estopped from asserting any statute of limitations expiration defenses against Plaintiffs

[4] see https://www.instagram.com/p/DV9Rf_0knx2 / and https://www.facebook.com/RCSNC/photos/congratulations-to-our-2021-2022-teachers-of-the-yearhilarie-beam-cmssheila-woma/4198154020277965/

because Defendants' fabrication, concealment, fraudulent distortion of facts, material misrepresentations, delayed notice, failure to document, failure to report, and incomplete records production prevented Plaintiffs from discovering the full scope of the claims.

103. Plaintiffs plead that all claims are timely. Alternatively, any otherwise applicable limitations period is tolled by J.P.'s minority, Defendants' fraudulent concealment, and Defendants' conduct giving rise to equitable estoppel.

## CLAIMS FOR RELIEF

### COUNT I: Disability Discrimination in Violation of Section 504 of the Rehabilitation Act

(Defendant Burke County Board of Education)

104. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

105. Pursuant to the IDEA, J.P. is a qualified student with a disability.

106. Upon information and belief, Burke County Board of Education receives federal funds and is subject to Section 504, IDEA, and must comply with the anti-discrimination policies regarding students with disabilities.

107. Defendants denied J.P. equal access to public education, safety, appropriate services, and nondiscriminatory treatment because of his disability.

108. Defendants' failures included abuse, restraint, exclusion, failure to provide disability-related supports, failure to provide trauma-related

services, failure to document the assault in the IEP process, and failure to protect J.P. from disability-based harm.

109. Federal courts have found that Section 504 and ADA claims are plausible where plaintiffs alleged a disabled student was denied access to the classroom and peers through restraint and seclusion imposed because of disability-related behaviors.

110. Defendants' conduct was intentional, deliberately indifferent, and caused J.P. injury.

111. Defendants' conduct is a direct and proximate cause of Plaintiffs' injuries, damages, violations of Plaintiffs' rights under the Constitution, Federal Statutes, and North Carolina Law.

112. Further, because Defendants actions and omissions were a direct and proximate cause of Plaintiffs injuries and damages, Plaintiffs are entitled to recover damages from Defendants in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) and all damages recoverable under Section 504 of the Rehabilitation Act of 1973 and all other applicable or adequate remedies appropriate under federal and state law.

**COUNT II**
**Disability Discrimination and**
**Retaliation in Violation of Title II of the ADA**
(Burke County Board of Education)

113. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

114. J.P. is a qualified individual with a disability under the ADA.

115. Burke County Board of Education is a public entity.

116. Defendants excluded J.P. from participation in, denied him the benefits of, and subjected him to discrimination in public education because of his disability.

117. Following Ms. Lacy's complaints and participation in constitutionally protected activity by reporting Defendants failures to accommodate and or follow written notice requirements, Defendants subsequently began changing J.P.'s 1:1 EC plans, excluded Ms. Lacy from IEP meetings, and concealed material information regarding J.P.'s injuries, records, and education plans.

118. Defendants failed to reasonably modify policies, practices, training, supervision, reporting, and special-education procedures to protect J.P. from abuse, restraint, exclusion, and denial of equal educational access.

119. By concealing documents and failing to report instances of abuse, assault, and restraint by BCPS employees, Defendants acted with recklessness, malice, conscious disregard, and deliberate indifference to J.P.'s federally protected rights and educational access.

120. Collectively, Defendants acted in concert to conceal, materially misrepresent, and fail to properly report acts of unlawful restraint, illegal abuse, aversive procedures, and other unlawful behavioral programs that adversely affected the rights, safety, and disability accommodations of students with disabilities – including J.P.

121. Further, because Defendants actions and omissions were a direct and proximate cause of Plaintiffs injuries and damages, Plaintiffs are entitled to recover damages from Defendants in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) and all damages recoverable under Title II of the Americans with Disabilities Act.

## COUNT III
## 42 U.S.C. § 1983, Fourteenth Amendment Equal Protection
(Burke County Board of Education and Individual Defendants Poteat, Ervin, Swan, Gravel, Carico)

122. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

123. As individual "persons", Defendants Poteat, Ervin, Gravel, Swan, and Carico acted under color of state law, with regarding to §1983 liability.

124. Additionally, Defendants Poteat, Ervin, Gravel, Swan, and Carico acted within the course and scope of their power, authority, employment, and/or agency with BCPS, as applied to their official capacity liability.

125. J.P. had the right to equal protection of the laws and equal access to public education without disability-based discrimination.

126. Defendants treated J.P., a disabled autistic nonverbal child, differently from similarly situated nondisabled students by subjecting him to abuse, restraint, exclusion, lack of medical response, lack of documentation, and lack of parental notice.

127. Equal Protection claims are plausible where a disabled student allegedly was denied equal access to education and restrained or secluded for disability-related conduct for which nondisabled peers were not similarly punished[5].

128. Defendants' conduct lacked a legitimate governmental purpose and reflected intentional or purposeful discrimination.

129. Burke County Board of Education is liable because the violations resulted from its customs, policies, practices, failures to train, failures to supervise, ratification, deliberate indifference, and acts of officials with final policymaking authority.

130. Further, because Defendants actions and omissions were a direct and proximate cause of Plaintiffs injuries and damages, Plaintiffs are entitled to recover damages from Defendants in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) and all damages recoverable under 42 U.S.C. §§1983, 1988.

**COUNT IV**
**42 U.S.C. § 1983 Fourteenth Amendment violations: Substantive Due Process and Bodily Integrity**
(Burke County Board of Education and Individual Defendants Poteat, Swan, Ervin, Gravel, Carico)

131. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

[5] See, e.g., *L.P . by & through J.P. v. Wake Cnty. Bd. of Educ.*, No. 5:20-CV-481-BO, 2021 WL 5936219, (E.D.N.C. Dec. 15, 2021)

132. J.P. had a constitutional right to bodily integrity, personal security, and freedom from arbitrary, conscience-shocking abuse by school officials.

133. Defendants violated J.P.'s bodily integrity by allegedly assaulting, restraining, failing to protect, failing to obtain medical care, and concealing abuse of a disabled nonverbal preschool child.

134. In a similar case, the United States District Court for the Eastern District of North Carolina court found substantive due process allegations plausible where school officials allegedly restrained and secluded a disabled child as punishment, causing physical and emotional pain, after notice of harm and after Plaintiff(s) exhausted administrative remedies[6].

135. Defendants' conduct shocks the conscience and was objectively unreasonable in light of J.P.'s age, disability, nonverbal status, and vulnerability.

136. Burke County Board of Education is liable because the violations resulted from policy, custom, deliberate indifference, failure to train, failure to supervise, and ratification.

137. Further, because Defendants actions and omissions were a direct and proximate cause of Plaintiffs injuries and damages, Plaintiffs are entitled to recover damages from Defendants in an amount in excess of Twenty-Five

[6] See *L.P. ex rel. J.P. v. Wake Cnty. Bd. of Educ.*, 5:20-cv-481 BO, 2021 WL 5936219, at *7 (E.D. N.C. Dec. 15, 2021), for the proposition that "if an ADA claim or [§] 504 claim seeks relief that is also available under the IDEA, the party must first exhaust its administrative remedies."

Thousand Dollars ($25,000.00) and all damages recoverable under 42 U.S.C. §§1983, 1988.

**COUNT V**
**42 U.S.C. § 1983, Fourteenth Amendment Procedural Due Process**
(Burke County Board of Education and Individual Defendants Poteat, Swan, Ervin, Gravel, Carico)

138. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

139. J.P. had protected liberty and property interests in bodily integrity, personal security, public education, and access to educational services.

140. Ms. Lacy had protected procedural rights to notice, participation, and truthful information regarding J.P.'s safety, restraint, abuse, injury, educational access, and special-education services.

141. Defendants deprived Plaintiffs of due process by failing to promptly notify Ms. Lacy, failing to provide medical care, failing to document the incident, failing to disclose material facts, failing to report to appropriate entities, failing to provide complete records, and misleading Ms. Lacy regarding Poteat's licensure and future ability to teach.

142. At the pleading stage, federal court recognize that parents had a due process right, at minimum, to notice about their child's exclusion from educational time and found a claim plausible where defendants allegedly hid

restraint and seclusion from parents, defeating Defendants supposed qualified immunity arguments[7].

143. Defendants' material misrepresentations and concealment deprived Plaintiffs of the opportunity to seek timely protection, services, redress, and review.

144. Further, because Defendants actions and omissions were a direct and proximate cause of Plaintiffs injuries and damages, Plaintiffs are entitled to recover damages from Defendants in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) and all damages recoverable under 42 U.S.C. §§1983, 1988.

**COUNT VI**
**42 U.S.C. § 1983 Fourth Amendment:**
**Unreasonable Seizure and Excessive Use of Force**
(Burke County Board of Education and Individual Defendants Poteat, Swan, Ervin, Gravel, Carico)

145. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

146. At all times relevant hereto, J.P. had the right to be free from unreasonable seizure and excessive force in the school setting.

147. Defendants used or allowed unreasonable physical force against J.P., a disabled, nonverbal preschool child.

[7] See *L.P . by & through J.P. v. Wake Cnty. Bd. of Educ*., No. 5:20-CV-481-BO, 2021 WL 5936219, at *4 (E.D.N.C. Dec. 15, 2021) ("The defense of immunity is evaluated under Federal Rule of Civil Procedure 12(b)(6)."); see also *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013) (reviewing a district court's denial of qualified immunity under Rule 12(b)(6) or Rule 12(c), but not Rule 12(b)(1)).

148. A Fourth Amendment claim for unreasonable restraint/excessive force claim is plausible where school officials allegedly restrained and secluded a disabled child in a manner unreasonable in light of the child's age, disability, and lack of serious danger. See, e.g., *L.P . by & through J.P. v. Wake Cnty. Bd. of Educ.*, No. 5:20-CV-481-BO, 2021 WL 5936219, (E.D.N.C. Dec. 15, 2021).

149. "A seizure violates the Fourth Amendment if it is objectively unreasonable under the circumstances. In applying the Fourth Amendment in the school context, the reasonableness of the seizure must be considered in light of the educational objectives [the school official] was trying to achieve." See *Doe ex rel. Doe v. Hawaii Dep't of Educ.*, 334 F.3d 906, 909 (9th Cir. 2003)(internal citations omitted).

150. The United States Supreme Court has also considered the reasonableness of a search or seizure in a school setting, stating that the search or seizure must be reasonably related to its purpose, and must not be "excessively intrusive in light of the age and sex of the student and the nature of the infraction." See *New Jersey v. T.L.O.*, 469 U.S. 325, 342, 105 S.Ct. 733, 83 L.Ed.2d 720 (1985).

151. Further, North Carolina General Statute Section 115C-391.1 sets forth several situations where restraint of a student may be unreasonable use of force, including "aversive procedures" that would are reasonably foreseeable to result in physical or psychological harm.

152. Pursuant to § 115C-391.1, restraint is not a reasonable use of force when used solely as a disciplinary consequence or is not in a student's IEP or Section 504 plan, with specified behavior interventions.

153. There is no reasonable explanation for why a 4-year-old elementary student such as J.P. would be restrained and abused for the aforementioned behaviors.

154. Additionally, there is no justification as to why Defendants would fail to report the restraint or abuse, fail to intervene, conceal material information to Ms. Lacy, and fail to adhere to subsequent accommodations for J.P. that resulted directly from the injurious and traumatic events that J.P. suffered.

155. Defendants' use of physical force to subdue a 4-year-old non-verbal student with a documented qualifying disability in absence of any IEP or Section 504 plans for J.P., and Defendants subsequent failures to intervene, protect, notify, or report were unreasonable and caused significant injuries and damages to J.P. and Plaintiff Ms. Lacy.

156. Further, because Defendants actions and omissions were a direct and proximate cause of Plaintiffs injuries and damages, Plaintiffs are entitled to recover damages from Defendants in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) and all damages recoverable under 42 U.S.C. §§1983, 1988.

**COUNT VII**

## 42 U.S.C. § 1983, Monell Policy, Custom, Practice, Failure to Train, Failure to Supervise, and Ratification Against Burke County Board of Education

157. Plaintiffs incorporate all preceding paragraphs.

158. A municipal policy or custom may arise through an express policy, decisions of a final policymaker, an omission such as failure to train that manifests deliberate indifference, or a persistent and widespread practice with the force of law. *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003).

159. Failure-to-train liability exists where the failure amounts to deliberate indifference, reflects a deliberate or conscious choice by policymakers, and is closely related to the constitutional injury. *City of Canton v. Harris*, 489 U.S. 378, 388-91 (1989).

160. Burke County Board of Education maintained customs, policies, practices, and omissions that caused the violations of J.P.'s constitutional rights.

161. Those customs, policies, practices, and omissions included failure to train employees regarding abuse prevention, use of force, restraint, seclusion, mandatory reporting, parent notice, medical response, documentation, special-education recordkeeping, and disability discrimination.

162. Defendants failure to supervise employees and administrators who knew or should have known of the abuse and delayed notice, failed to report, and concealed material information, depriving Plaintiffs of their clearly established Constitutional rights.

163. Defendant Ervin witnessed the assault and continue to cover-up, conceal, misrepresent, and conspire to deprive Plaintiffs of the Constitutional rights and federal-protected guarantees afforded to children with disabilities and entitled to a right to a sound basic education in Burke County Public Schools.

164. Defendants willfully, intentionally, recklessly, or maliciously kept J.P. at school all day without medical care and returned him to Ms. Lacy without prompt disclosure.

165. Defendants further misled Ms. Lacy into believing that Defendant Poteat would be held responsible for her malicious acts, including that BCPS would report Poteat and that Poteat would lose her license and never teach again.

166. Nonetheless, in May of 2025, Ms. Lacy discovered that Defendant Poteat was allowed to continue teaching and had been named Teacher of the Year in another district. This was due to the deliberate concealment, failure to report Defendant Poteat, and repeated actions to discriminate and retaliate against J.P. following Ms. Lacy's attempts to protect J.P. from further injury and trauma.

167. Ms. Lacy reported that the incident was not included in J.P.'s IEPs or records and that records requests were only partially fulfilled. Defendants concealed this information for nearly a decade, before Ms. Lacy discovered the misrepresentations in the May 15, 2025 IEP meeting.

168. Despite eyewitness account by Defendant Ervin, Defendants failed to make mandated reports or filings of the unlawful restraints, abuse, and systemic discrimination and maltreatment of J.P. by Defendant Poteat to the appropriate authorities such as Department of Social Services, Child Protective Service, NCDPI, or NC State Board of Education licensing boards.

169. Collectively, the actions and omissions of Defendants show actual notice, deliberate indifference, ratification, and a custom or practice of concealment.

170. Defendant School Board's failures caused and prolonged the deprivation of J.P.'s constitutional rights.

171. As a direct and proximate result of Defendants aforementioned actions, the resulting personal injury and damages to Plaintiffs, Plaintiffs are entitled to recover damages from Defendants in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00) and all damages recoverable under 42 U.S.C. §§1983, 1988.

## COUNT VIII
## 42 U.S.C. § 1983 Civil Conspiracy to Deprive Constitutional Rights Against Burke County Board of Education and Individual Defendants

172. Plaintiffs incorporate all preceding paragraphs.

173. Defendants conspired or acted jointly and in concert to conceal the abuse, mislead Ms. Lacy, prevented accountability, fabricated evidence or documentation by intentional omission, and delayed discovery of constitutional violations until May of 2025.

174. Liability for § 1983 under a conspiracy agreement may be proven circumstantially, including where officials demonstrate acquiescence or witness to constitutional misconduct and do nothing to prevent it. *Hafner v. Brown*, 983 F.2d 570, 577 (4th Cir. 1992).

175. Defendants committed overt acts in furtherance of the conspiracy, including delayed notice, failure to obtain medical care, failure to report, failure to document, misrepresenting Poteat's licensure consequences, omitting the incident from educational records, delaying or failing to produce records, and allowing conflicted personnel to participate in J.P.'s later special-education process.

176. In similar cases, district courts have found that a Plaintiff's § 1983 conspiracy claim is plausible where defendants allegedly participated directly, had firsthand knowledge, failed to stop unlawful restraint/seclusion, hid the conduct from parents, or failed to act after notice[8].

177. Burke County Board of Education is liable because the conspiracy and concealment were undertaken by policymakers, ratified by policymakers, or resulted from customs, practices, and deliberate-indifference omissions attributable to the Board.

178. As a direct and proximate result of Defendants aforementioned actions, the resulting personal injury and damages to Plaintiffs, Plaintiffs are entitled to recover damages from Defendants in an amount in excess of

[8] See *L.P . by & through J.P. v. Wake Cnty. Bd. of Educ.*, No. 5:20-CV-481-BO, 2021 WL 5936219, (E.D.N.C. Dec. 15, 2021).

Twenty-Five Thousand Dollars ($25,000.00) and all damages recoverable under 42 U.S.C. §§1983, 1988.

**COUNT IX**
**Negligence, Negligence Per Se, Negligent Supervision/Training, and Negligence of Defendant Burke County School Board through respondeat superior and/or vicarious liability**
(Against All Defendants as Applicable)

179. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

180. Negligence, at common law, contains three elements: (1) a legal duty; (2) a breach thereof; and (3) injury proximately caused by the breach." *Fussell v. N.C. Farm Bureau Mut. Ins. Co*., 695 S.E.2d 437, 440 (N.C. Sup. Ct. 2010).

181. Defendant Board, Superintendent Swan, Principal Ervin, Teacher Poteat, EC Director Gravel, and Consultant Carico breached their duty of care and to report restraint and unlawful abuse, maltreatment, excessive force, and assault to J.P.'s parent under North Carolina General Section 115C-391.1 as well as Board policy.

182. Further, Defendants breached their duty of care and duty to report in that:

a. Defendants are mandatory reporters and do not have the authority to exercise discretion upon receipt of a report of restraint or seclusion;

b. Defendants knew of Teacher Poteat's restraint of J.P.;

c. Defendants knew of the physical, psychological, and emotional harm the illegal restraint and abuse would cause J.P.;

d. Any school employee of reasonable intelligence would know to report the restraint and abuse;

e. As a result of Defendants' failures, J.P. suffered injuries, including, but not limited to:

   i. Continued unreported unlawful restraint while at school;

   ii. Physical injuries;

   iii. Emotional distress as a result of the illegal restraint and abuse;

   iv. Latent psychological trauma and cognitive deficits, including developmental regressions in his autism diagnoses;

   v. Lost access to his education as a result of the restraint and concealment by Defendants;

   vi. J.P. received therapeutic interventions, psycho-therapy, and additional emotional and behavioral support due to the abuse, maltreatment, and inflicted pain by Defendant Poteat; and

   vii. Future damages not yet realized but that will be addressed through discovery and at trial;

183. Defendants owed J.P. duties of reasonable care, supervision, protection, reporting, documentation, and compliance with state and federal law.

184. Defendants breached those duties by failing to protect J.P., failing to provide medical care, failing to timely notify Ms. Lacy, failing to report the

abuse, failing to document the incident, failing to supervise Poteat and other employees, and failing to prevent further harm.

185. Defendants knew or should have known that Poteat and other employees posed a risk to J.P. and other disabled students.

186. Principal Ervin, Ms. Poteat, and Ms. Gravel breached their duty of ordinary care to protect students, including J.P., from injury and damage, causing injuries to Plaintiff J.P. Due to Principal Ervin, Ms. Poteat, and EC Director Gravel's actions, J.P. lost instructional time and suffered emotional distress and ongoing psychological issues including symptoms of PTSD.

187. Defendants actions and omissions were the proximate cause of J.P.'s injuries, including emotional distress, physical harm, and psychological damages.

188. Defendants' negligence proximately caused harm to J.P. and Ms. Lacy.

189. To the extent that Defendants actions violated the duties and responsibilities set forth in N.C. Gen. Stat. § 115C-391.1, Defendants breach of duty by their unlawful restraints and *aversive procedures* prohibited by N.C. Gen. Stat. § 115C-391.1 amount to *negligence per se*.

190. As stated in N.C. Gen. Stat. § 115C-391.1(b)(2), "Aversive procedure" means a systematic physical or sensory intervention program for modifying the behavior of a student with a disability which causes or reasonably may be expected to cause one or more of the following:

a. Significant physical harm, such as tissue damage, physical illness, or death.
b. Serious, foreseeable long-term psychological impairment.

c. Obvious repulsion on the part of observers who cannot reconcile extreme procedures with acceptable, standard practice, for example: electric shock applied to the body; extremely loud auditory stimuli; forcible introduction of foul substances to the mouth, eyes, ears, nose, or skin; placement in a tub of cold water or shower; slapping, pinching, hitting, or pulling hair; blindfolding or other forms of visual blocking; unreasonable withholding of meals; eating one's own vomit; or denial of reasonable access to toileting facilities.

191. Defendants violated the statute designed to protect students such as J.P., Plaintiff J.P. was a student with a disability who was a non-verbal autism level III student that was vulnerable to maltreatment or unlawful restraints, and was harmed by the Defendants violations by which the statute was designed to protect against – namely "significant physical harm" and "serious psychological impairment" and "slapping or hitting."

192. The negligence of the individually named Defendants -- Poteat, Swan, Ervin, Gravel – occurred while acting during the course and scope of employment, authority, or agency with Defendant School Board (BCPS). Therefore, all negligence of the individually named Defendants is imputed to Defendant BCPS as employer/master/principal and through the doctrine of *respondeat superior* and/or vicarious liability.

193. As a direct and proximate cause of Defendants negligence, Plaintiffs are entitled to recover damages from Defendants in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

**COUNT X**
**Negligent Infliction of Emotional Distress (N.I.E.D) and Intentional Infliction of Emotional Distress (I.I.E.D.)**
(Against Individual Defendants Poteat, Swan, Ervin, Gravel, Carico)

194. Plaintiffs incorporate all preceding paragraphs into this Count by reference as if fully stated herein.

195. A defendant is liable for negligent infliction of emotional distress when "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress . . . , and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Acosta v. Byrum*, 180 N.C. App. 562, 667 (2006) (quoting *R. Johnson v. Ruark Obstetrics*, 327 N.C. 283, 304, 395 S.E.2d 85, 97 (1990)).

196. Defendants had a duty at all times to act reasonably and to make reasonable steps to prohibit discrimination or unreasonable risks of harm to the safety and rights of Plaintiffs.

197. At all times relevant to this action, Defendants breach their duty of care and acted maliciously, recklessly, or with deliberate indifference to the rights and safety of Plaintiffs by: unlawfully restraining J.P.; physically assaulting or abusing J.P.; failing to promptly report the assault or restraint to J.P.'s parent; failing to properly report Ms. Poteat to the state authorities; unjustifiably altering existing IEP, 504, or EC services to J.P. resulting in detrimental trauma, anxiety, and developmental regression; making material misrepresentations and concealing records affecting J.P.'s educational opportunities and safety as a student with a disability in BCPS.

198. It was reasonably foreseeable that such actions, including unlawful restraint or aversive procedures would result in emotional distress of Plaintiffs. See NC. Gen. Stat. § 115C-391.1.

199. The actions and omissions of Defendants did, in fact, result in emotional distress, trauma, anxiety, and other emotional distress to Plaintiffs.

200. Defendants engaged in extreme and outrageous conduct by abusing or allowing the abuse of a disabled nonverbal child, concealing the abuse, failing to obtain medical care, misleading the child's mother, and failing to report or document the incident.

201. Defendants intended to cause emotional distress or acted with reckless disregard of the likelihood that severe emotional distress would result.

202. Plaintiffs suffered severe emotional distress.

203. As a direct and proximate result of Defendants actions and the aforementioned negligent and reckless conduct, Plaintiffs suffered personal injuries and emotional distress and are entitled to recover damages from Defendants in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

**COUNT XI**
**Assault and Battery**
(Defendant Poteat and
BCPS Defendants Who Participated, Aided, or Failed to Intervene)

204. Plaintiffs hereby incorporate by reference the allegations contained in all previous paragraphs with the same force and effect into this Claim for Relief.

205. Defendant Poteat acted volitionally and intentionally to cause harmful or offensive contact with J.P.'s person and placed him in reasonable apprehension of imminent threat of danger or harmful and offensive contact, to the extent a reasonable person in the position of a nonverbal disabled preschool child could experience and manifest such apprehension.

206. Defendant Poteat was criminally charged with assault on a handicapped person arising from the incident.

207. The assault and battery were intentional, unlawful, and caused injury.

208. J.P. suffered personal injuries, damages, losses, emotional distress and other damages as a result of Defendant Poteat's assault and battery.

209. As a direct and proximate result of Defendants aforementioned actions, the resulting personal injury and damages to Plaintiffs, Plaintiffs are entitled to recover damages from Defendants in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

**COUNT XII**
**False Imprisonment / Unlawful Restraint**
(Defendants Poteat and Principal Ervin, in their individually named capacities)

210. Plaintiffs hereby incorporate by reference the allegations contained in all previous paragraphs with the same force and effect into this Claim for Relief.

211. The court in *Wilkerson v. Duke Univ.*, 229 N.C. App. 670, 674 (2013) addressed the standard for claims of false imprisonment as such:

> False imprisonment is the restraint of a person where the restraint is both unlawful and involuntary. *Black v. Clark's Greensboro, Inc.,* 263 N.C. 226, 228, 139 S.E.2d 199, 201 (1964). The elements of false imprisonment include: "(1) the illegal restraint of plaintiff by defendant, (2) by force or implied threat of force, and (3) against the plaintiff's will." *Rousselo v. Starling*, 128 N.C.App. 439, 449, 495 S.E.2d 725, 732 (1998). "The restraint requirement of this action requires no appreciable period of time, simply sufficient time for one to recognize his illegal restraint. The tort is complete with even a brief restraint of the plaintiff's freedom." *West v. King's Dep't Store, Inc.*, 321 N.C. 698, 703, 365 S.E.2d 621, 624 (1988).

212. Beginning in 2014 but lasting until, at least, Plaintiffs made discoveries in 2025, Defendants unlawfully restrained J.P. by force, implied force, authority, or coercion, against his will.

213. Further Defendants had a policy, custom, practice, or routine of illegally restraining or physically assaulting students with disabilities, such as J.P., in violation of state and federal law.

214. Upon information and belief, J.P. was involuntarily imprisoned, restrained, and subdued by excessive use of force one at least one confirm occasions but it is believed that this conduct occurred on multiple occasions by Defendant Poteat and in agreement or acquiescence by Defendant (Principal) Ervin.

215. To the extent discovery confirms restraint, confinement, isolation, or seclusion of J.P., those acts constituted false imprisonment and unlawful restraint.

216. Defendants' restraint of J.P. was unlawful, not reasonably necessary, not medically justified, not educationally justified, and not lawfully documented or reported to the proper authorities or Ms. Lacy.

217. As a direct and proximate result of Defendants aforementioned actions, the resulting personal injury and damages to Plaintiffs, Plaintiffs are entitled to recover damages from Defendants in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

**COUNT XIII**
**Violation of the Fourteenth Amendment**
**Substantive & Due Process Clauses 42 U.S.C. § 1983**
(Defendant Superintendent Swan, Teacher Poteat, Principal Ervin, EC Director Gravel, and Autism Consultant Carico)

218. Plaintiffs and hereby reallege, restate, and incorporate by reference into this Count, with the same force or effect, the preceding allegations set forth above.

219. Pursuant to 42 U.S.C. § 1983, "every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

220. "Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

221. Plaintiff J.P., a child with a documented and qualifying disability, has now, and had at all times relevant in this action, statutorily protected rights provided by Section 504, IDEA, and Title II of the Americans with Disabilities Act. Further, Plaintiff Kristy Lacy, as J.P.'s parent and guardian, has statutorily protected due process rights with regard to making complaints or requesting compliance with J.P.'s educational rights such as a free appropriate public education (FAPE), due process safeguards set forth under the IDEA[9], and the Fourteenth Amendment of the United States Constitution.

222. The North Carolina Department of Public Instruction also sets forth procedural safeguards and due process rights for parents, such as Plaintiff Kristy Lacy, for enforcing rights to protect students with disabilities, like J.P., under the IDEA and FAPE[10]. (see Exhibit D, NCDPI Parent Handbook).

---

[9] 34 CFR §§ 300.507 – 300.518 and NC 1504-1.8 through NC 1504-1.19; see also S. Almazan, A. Feinstein, D. Marshall, ***Quality Education for America s Children with Disabilities: The Need to Protect Due Process Rights***. *(2017)* Child and Family Law Journal, Barry School of Law.
[10] http://ec.ncpublicschools.gov/parent-resources/dispute-resolution/due-process-hearings

223. It is well established that deprivations of constitutionally [and statutorily] protected rights may arise due to "governmental 'custom' even though such a custom has not received formal approval through the body's official decision-making channels." Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978).

224. Further, in establishing a constitutional deprivation, a policy or custom of a state actor, including a local board of education, "may possibly be inferred from continued inaction in the face of a known history of widespread constitutional deprivations on the part of [government] employees,." *see Wellington v. Daniels*, 717 F.2d 932 (4th Cir. 1983). Additionally, the deprivation may be evidenced "from the manifest propensity of a general, known course of employee conduct to cause constitutional deprivations to an identifiable group of persons having a special relationship to the state." *Milligan v. City of Newport News*, 743 F.2d 227 (4th Cir. 1984); *see also Avery v. County of Burke*, 660 F.2d 111 (4th Cir. 1981).

225. For purposes of §1983 *Monell* liability against a municipality or local board of education for deprivation of constitutional rights, federal district courts and the Fourth Circuit recognize four (4) ways to allege a policy or custom:

> Through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission . . . that manifest[s] deliberate indifference to the rights of citizens; or (4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law.

*Oliver v. Baity*, 208 F. Supp.3d 681, 689 (M.D.N.C. 2016)(internal quotation marks omitted); see also *Howard v. City of Durham*, 68 F.4th 934, 952 (4th Cir. 2023).

226. Additionally, a plaintiff who seeks to establish a *Monell* theory of §1983 liability based on policy or custom by highlighting a municipality's omissions instead of actions, the appropriate standard to analyze is the "deliberate indifference" standard. *Est. of Jones v. City of Martinsburg*, 961 F.3d 661, 672 (4th Cir. 2020), as amended (June 10, 2020) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)).

227. Pursuant to 42 U.S.C. §1983, "persons" acting under color of state law who violate the United States Constitution may be sued. Federal law, not state law, determines whether a governmental body qualifies as a "person" subject to suit under § 1983.

228. With regard to §1983 claims relating to education rights and due process, a government actor's conduct may rise to the level of a substantive due process violation if the conduct is arbitrary or conscience shocking. *Collins v. City of Harker Heights*, 503 U.S. 115, 116 (1992); see also *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 251 (2d Cir. 2001) (holding substantive due process claims against individual defendant and school district could move forward as student had "constitutional 'right to be free from the use of excessive force' in the 'non-seizure, non-prisoner context' in school.").

229. Plaintiff J.P. is entitled to due process before being unlawfully restrained or restricting his liberties pertaining to equal protection of the laws, as a member of a protected class – individuals with disabilities. see U.S. Const. Amend XIV.

230. Additionally, as set forth by IDEA, Section 504, Title II, and alleged by Burke County Board Policies (see Exhibit E), Plaintiff Kristy Lacy has the right to make complaints against discriminatory treatment of J.P. based on his disability status, demand accountability for maltreatment, and participate in the IEP process without exclusion or concealment of material information affecting J.P.'s equal protection and access to public education.

231. At all times relevant in this action, Defendants were members, employees, or agents of the Burke County Board of Education, and persons acting under color of state law, empowered and required by the State of North Carolina to, among other things, protect students from unreasonably unsafe circumstances, provide EC services and ADA, Section 504, and IDEA-FAPE accommodations, and to comply with state and federal regulations that prohibit discrimination based on a student's disability status.

232. Under the Fourteenth Amendment, J.P. had the right, as a public-school student, to access his education, and to enjoy equal access to an educational environment free from harassment, discrimination, abuse, unlawful restraint, or retaliation. Ms. Lacy also had the right to protect, complain, and enforce J.P.'s education rights, as his parent and guardian.

233. Plaintiffs' procedural due process rights were violated when BCPS Defendants:

a. Failed to promptly inform J.P.'s parent that restraint was used in the EC/IEP program and abuse was taking place to J.P.;
b. Failed to provide written notice required under North Carolina law regarding the unlawful restraint, abuse, and assault of J.P.;
c. Failed to conduct a prompt, impartial, and equitable investigation of the allegations of improper restraints or aversive procedures as applied to J.P.'s IEP or EC services;
d. Concealed material information regarding the status of Defendant Poteat, conspired to deprive J.P. of constitutional protections, and failed to report the actions of Poteat and other BCPS employees unlawful restraint, abuse, maltreatment, and malicious conduct to the State Board of Education and U.S. Department of Education Office of Civil Rights (OCR).

234. Defendants had no reasonable basis or rational justification for allowing the unlawful abuse and restraint of J.P. by Defendant Poteat, failure to train and supervise EC teachers and staff on lawful practices, failure to report criminal activity of Poteat, failure to make accommodations under Title II, IDEA-FAPE, and Section 504, and failure to remedy ongoing harms due to Defendants own concealment, misrepresentation, and discriminatory actions against Plaintiffs.

235. When Ms. Lacy learned of the unlawful and unconstitutional actions of Defendants, she immediately requested that J.P. be withdrawn, redistricted, and removed from BCPS. Defendants denied her request and failed to take accountability for their abuse of J.P. and violations of IDEA, Title II, Section 504, FAPE, and other federally protected rights of Plaintiffs.

236. To this day, J.P. continues to suffer physical, emotional, psychological, and other harms due to the unconstitutional actions, omissions, fabrication of evidence, concealment of material information, retaliatory failures to accommodate, and repeated failures to address the direct and systemic issues relating to Defendants' unlawful restraint practices and/or aversive procedures relating to students with disabilities in BCPS.

## COUNT XIV

**Violation of the North Carolina Constitution and alternative *Corum* Claim for inadequate remedy to Plaintiffs under state law**

(Defendant Superintendent Swan, Teacher Poteat, Principal Ervin, EC Director Gravel, and Autism Consultant Carico)

237. Plaintiffs and hereby reallege, restate, and incorporate by reference into this Count, with the same force or effect, the preceding allegations set forth above.

238. The North Carolina Constitution vests in every schoolchild a right to the opportunity to access a sound basic education. *Leandro v. State*, 346 N.C. 336, 345, 347, 488 S.E.2d 249 (1997).

239. The rights and guarantees of the opportunity for students in North Carolina to have equal access to a sound basic education is a "fundamental

right" is these rights are "rooted in the text, structure, and history of our Constitution." See *Leandro*, 346 N.C. 336, at 348.

240. "[I]n the absence of an adequate state remedy, one whose state constitutional rights have been abridged has a direct claim against the State under our Constitution." *Corum v. University of North Carolina*, 330 N.C. 761, 413 S.E.2d 276, cert. denied, 506 U.S. 985, 113 S.Ct. 493, 121 L.Ed.2d 431 (1992).

241. Although the "fundamental right" to "equal access to participation in our public school system," *Sneed v. Greensboro City Bd. of Educ.*, 299 N.C. 609, 618, 264 S.E.2d 106 (1980), does not generally hold school districts liable for the intentional torts of their teachers, it does make local authorities responsible for responding reasonably to such incidents once they occur. Failing to do so may constitute deliberate indifference to conduct that prevents [schoolchildren] from accessing their constitutionally guaranteed right to a sound basic education." *Deminski ex rel. C.E.D. v. St. Bd. Of Educ.*, 377 N.C. 406, 414, 858 S.E.2d 788 (2021).

242. A plaintiff may establish, in her complaint, against a School Board facts sufficient to state a colorable constitutional claim and that she lacks an adequate other state remedy for the Board's actions. See *Deminski*, 377 N.C. 406, 413, 858 S.E.2d 788 (2021) (summarizing the three *Corum* elements as applied to an individual constitutional claim under Article I, Section 15 and Article IX, Section 2 of our state constitution).

243. Specifically, Article I, Section 15 places an affirmative duty on "the State to guard and maintain" the "right to the privilege of education." Article IX, Section 2 guarantees a uniform public school system "wherein equal opportunities shall be provided for all students." This mandatory language creates an obligation on the State to "take charge of the education of its citizens," *Lane v. Stanly*, 65 N.C. 153, 158 (1871), and reflects the framers' intent to constitutionally "establish and secure ... a system of free popular education," *Collie v. Comm'rs of Franklin Cnty*., 145 N.C. 170, 175, 59 S.E. 44 (1907) (cleaned up).

244. Plaintiff Kristy Lacy is not afforded an adequate state law remedy for injunctive relief or monetary relief due to the constitutional deprivations resulting from Defendants practice of undisclosed unlawful restraints, concealment of material information relating to J.P.'s education records or EC/IEP accommodations, misrepresentations and failure to report Defendant Poteat to the appropriate authorities resulting in severe emotional distress to Ms. Lacy and to J.P., and the aforementioned conspiracy to deprive J.P. of federally protected and constitutional rights as a student with a known disability in the care of BCPS.

245. Like the plaintiffs in *Deminski*, Plaintiffs in this case state that "while state law provides for an administrative process to challenge the school's actions, it does not provide for the desired remedy of damages and injunctive

relief, so the court held that no adequate remedy existed and that a *Corum* claim was available." *Deminski*. at 414, 858 S.E.2d at 794.

246. Additionally, Plaintiffs seek redress for the type of relief that may be available through a common law negligence claims—monetary damages—but Plaintiffs may still bring a *Corum* claim in the event that Defendants claim that Plaintiffs' action is otherwise barred by sovereign immunity. See, e.g., *Craig ex rel. Craig v. New Hanover County Board of Education*, 363 N.C. 334, 678 S.E.2d 351 (2009).

247. Ms. Lacy seeks to appeal the administrative final order set forth by the OAH, namely the reassignment rights of J.P. under IDEA, FAPE, and other anti-discrimination regulations against students with disabilities. Defendants claim, and the OAH accepted Defendants assertion that such relief is not proper and shall not be granted to Plaintiffs. (Exhibit A, ¶¶ 13-18).

248. Defendants contend and the OAH upheld the contention that "under IDEA regulations (34 C.F.R. § 300.130-300.144), parentally placed private school (and homeschool) students do not have an individual entitlement to FAPE from the District" and BCPS offered "equitable services through a PSSP, or a Private School Services Plan" that Plaintiffs are entitled to. This is untrue and Plaintiffs OAH Petition sets forth the pretextual explanations and Defendants attempt to take damage control measures upon learning of

Ms. Lacy's withdrawal of J.P. from BCPS and her intention to file the OAH Complaint.

249. To date, Plaintiffs are left without recourse, an adequate injunctive remedy, or substantive state law remedy to address the violations of J.P.'s rights under IDEA, FAPE, Section 504, Title II of the ADA, U.S. Constitution, or North Carolina State Constitution in accordance with well-established case law with facts similar to Plaintiffs. See *Corum v. Univ. of N.C.*, 330 N.C. 761, 784, 413 S.E.2d 276, 291 (1992); see also *Craig ex rel. Craig v. New Hanover Cnty. Bd. of Educ.*, 363 N.C. 334, 340, 678 S.E.2d 351, 355 (2009); *Deminski ex rel. C.E.D. v. State Bd. of Educ.*, 377 N.C. 406, 413, 858 S.E.2d 788, 794 (2021).

250. Defendants actions deprived Plaintiffs of Equal Protection under the Fourteenth Amendment, Substantive and Procedural Due Process, the right to be free from unreasonable seizures under the Fourth Amendment, a sound basic education under the North Carolina Constitution, and harms whereby there may not be an adequate remedy under the North Carolina Constitution[11]. See *Corum v. University of North Carolina*, 330 N.C. 761, 771, 413 S.E.2d 276, 282, rehearing denied, 331 N.C. 558, 418 S.E.2d 664, cert. denied, 506 U.S. 985, 113 S.Ct. 493, 121 L.Ed.2d 431 (1992).

---

[11] See also*, Deminski ex rel. C.E.D. v. St. Bd. of Educ.*, 377 N.C. 406, 413, 858 S.E.2d 788 (2021) (summarizing the three *Corum* elements as applied to an individual constitutional claim under Article I, Section 15 and Article IX, Section 2 of our state constitution). Further stating "an education that does not serve the purpose of preparing students to participate and compete in the society in which they live and work is devoid of substance and is constitutionally inadequate." N.C. Const. art. 1, § 15; N.C. Const. art. 9, § 2.

## COMPENSATORY DAMAGES

1. Plaintiffs hereby incorporate by reference the allegations contained in all previous paragraphs into this Claim for Damages.
2. As a direct and proximate result of Defendants' conduct, J.P. suffered physical injury, emotional distress, trauma, regression, educational harm, loss of services, loss of equal access to education, loss of dignity, fear, anxiety, and other damages.
3. As a direct and proximate result of Defendants' conduct, Ms. Lacy suffered emotional distress, loss of trust, practical and financial harm, loss of time, loss of access to accurate information, and other damages.
4. Plaintiffs are entitled to compensatory damages in an amount to be determined by a jury.
5. As a direct and proximate result of Defendants aforementioned actions, the resulting personal injury and damages to Plaintiffs, Plaintiffs are entitled to recover damages from Defendants in an amount in excess of Twenty-Five Thousand Dollars ($25,000.00).

## PUNITIVE DAMAGES

6. Plaintiffs hereby incorporate by reference the allegations contained in all previous paragraphs into this Claim for Damages.
7. Under N.C. Gen. Stat. §1D-15, punitive damages may be recovered against a Defendant when such actions constitute grossly negligent, malicious, willful, wanton, and/or reckless with a conscious and intentional disregard for and

indifference to the rights or safety of others, specifically Minor J.P., and to all others similarly situated.

8. Minor J.P.'s former teacher and supposed caregiver during his time as a student in BCPS, Defendant Meagan Radford Poteat, physically and mentally abused, assaulted, battered, and unlawfully restrained Minor J.P., resulting in physical and mental injuries to Minor J.P. that have been ongoing and continuous.
9. Further, upon information and belief, Defendant Poteat was criminally charged with ***"ASSAULT ON A HANDICAPPED PERSON."*** (Exhibit B).
10. Defendant Poteat's conduct, which involved assault, battery, maltreatment, abuse, unlawful restraint, and unbecoming conduct amounts to malicious, corrupt, willful/wanton, reckless, deliberate indifference and/or conscious disregard for the safety of Plaintiffs, namely minor J.P.
11. At the time of Defendant Poteat's reckless and malicious assault and abuse of the non-verbal J.P., BCPS Defendants knew or should have known of Defendant's conduct and made intentional efforts to conceal material information and otherwise misrepresent information regarding the status of Defendant Poteat's alleged permanent suspensions of Poteat's teaching licensure and registry as a danger to children in previous meetings with Plaintiff Kristy Lacy.
12. Defendants concealed material facts from Ms. Lacy and made material misrepresentations that were not discovered until the May 15, 2025 I.E.P.

meeting. Defendants' actions, omissions, and fabrications of evidence amount to malicious conduct and a deliberate indifference to the rights and safety of Plaintiffs.

13. The Individual Defendants acted willfully, wantonly, maliciously, recklessly, and with deliberate indifference to Plaintiffs' federally protected rights.

14. Plaintiffs are entitled to punitive damages against the Individual Defendants in their individual capacities.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that the Court enter judgment in their favor and order relief as follows:

1. Appeal the decision of the OAH on June 08, 2026, and Find and declare that Defendants have discriminated against J.P. on the basis of his disabilities, in violation of Title II of the ADA and Section 504 by excluding him from participation in and denying the benefits of a public education;
2. Find and declare that Defendants have discriminated against J.P. on the basis of his disabilities, in violation of Title II of the ADA and Section 504 by denying him equal opportunity to participate in the benefits provided by Defendants that are afforded to students without disabilities;
3. Find and declare that Defendants have discriminated against J.P. and retaliated against Ms. Lacy on the basis of J.P. disabilities and Ms. Lacy's engaging in federally protected activities, in violation of Title II of the ADA and Section 504 by failing to provide reasonable behavior modifications and

accommodations in lieu of unlawful restraint, excessive force, and malicious conduct resulting in injuries and damages to Plaintiffs;

4. Find and declare that Defendants have violated 42 U.S.C. § 1983 and infringed upon J.P.'s constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution by subjecting J.P. to unlawful seizures and denying Plaintiffs due process and equal protection;
5. Order Defendants to provide dedicated therapy and counseling services to all students with disabilities who have been traumatized by Defendants use of restraint and seclusion, including J.P.;
6. Grant J.P.'s removal and BCPS's mandatory out of district accommodations after subjecting J.P. to a hostile learning environment and violation of J.P.'s rights under Title II of the ADA, Section 504, IDEA-FAPE, and other applicable federal or state laws prohibiting discrimination and retaliation against individual students with disabilities.
7. Award Plaintiffs compensatory damages against all Defendants, jointly and severally;
8. Award Plaintiffs punitive damages as sustained by Plaintiffs, and that Plaintiffs continue to sustain, in excess of TWENTY-FIVE THOUSAND DOLLARS ($25,000) against the individual Defendants, jointly and severally;
9. Award Plaintiffs nominal damages;

10. Award Plaintiffs reasonable attorneys' fees and costs, including litigation expenses, as provided by law;

11. Pre-judgment and post-judgment interest and recovery of costs, as well as reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988 and any other applicable laws;

12. Any other and further relief the Court deems equitable and just.

**JURY TRIAL DEMAND**

Plaintiffs respectfully demand a trial by jury of all issues in this matter so triable pursuant to Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

This 9th day of September, 2026.

**LAW OFFICES OF JAMES SCOTT FARRIN**

**/s/ Nichad Davis**
Nichad Davis (N.C. Bar No. 56297)
555 South Mangum Street, Suite 800
Durham, North Carolina 27701
Telephone: 919-688-4991
Facsimile: 919-688-4468
E-mail: ndavis@farrin.com
*Counsel for Plaintiffs*